IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | |
|---|---|
| Stanley Cheeseboro, ) | C/A No.: 3:11-2173-JFA-SVH |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | REPORT AND RECOMMENDATION |
| ) | |
| City of Columbia, ) | |
| ) | |
| Defendant. ) | |

In this employment discrimination case, Stanley Cheeseboro ("Plaintiff") is suing his former employer the City of Columbia ("Defendant"). Plaintiff alleges claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII").

This matter comes before the court on the motion for summary judgment filed by Defendant on June 4, 2012. [Entry #17]. Plaintiff filed a response to the motion on July 5, 2012 [Entry #21], and Defendant filed a reply on July 10, 2012 [Entry #22]. The motion for summary judgment having been fully briefed, it is ripe for disposition.

All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.). Because the motion for summary judgment is dispositive, this report and recommendation is entered for the district judge's consideration. For the reasons that follow, the undersigned recommends the district court grant the motion.

I.      Factual and Procedural Background

Plaintiff was first employed by the City of Columbia in its Forest and Beautification division as an at-will employee. [Entry #17-26 at 8; Entry #21-2 at 4]. On April 12, 2001, Plaintiff was given a written reprimand for failing to properly park a dump truck and causing a collision with another car. [Entry #17-2]. On May 24, 2001, he received a written suspension for leaving a meeting against orders and refusing to report to work when ordered. [Entry #17-3]. The reprimand indicated that Plaintiff's actions showed disrespect to his supervisor, as well as insubordination and an unauthorized absence. *Id.* Plaintiff received another suspension on August 17, 2001 for insubordination because he was in an unauthorized location during work hours. [Entry #17-4]. Although he was originally suspended for the incident on August 17, 2001, he filed a grievance, and his suspension was replaced with a written reprimand. [Entry #17-4 at 4]. On September 24, 2001, Plaintiff received a one-day suspension for repeated insubordination, intimidating another employee, interference with the work of others, and disrespect to a supervisor after he refused to accept a work assignment. [Entry #17-5].

Plaintiff was transferred to a position as a building and grounds maintainer on October 2, 2001. [Entry #17-6]. S. Allison Baker, the Senior Assistant City Manager, testified that the transfer was in lieu of the termination recommended by the director of public works. [Entry #17-25 at 4–5].

On September 8, 2008, Plaintiff was given a written warning after visiting a McDonald's with eight other employees. [Entry #17-7]. Another patron "was displeased by the tone of their conversation." *Id.* at 1. The franchise owner wrote a letter on

2

October 27, 2008 disputing the complaint about Plaintiff and noting that his conversation with the City of Columbia employees did not include any profanity or other disrespectful language. *Id.* at 4.

Also on September 8, 2008, Plaintiff refused to perform an assigned task at the Clyburn Golf Center. [Entry #17-8]. Plaintiff was suspended for a period of two days and warned that further action of this nature would be met with progressive disciplinary action. *Id.* at 2. Plaintiff appealed his two-day suspension to Defendant's Grievance Committee. [Entry #17-9]. The Committee found that the disciplinary action was warranted, but recommended a reduction to a one-day suspension. *Id.* The City Manager approved this recommendation. *Id.*

In November 2008, Plaintiff requested that Mr. Baker transfer him from outside to inside work. [Entry #17-26 at 29]. He reported that he wanted to be removed from the supervisors who had disciplined him for refusing to follow directives in September 2008. *Id.* at 30. Mr. Baker permitted Plaintiff to transfer to the Drew Wellness Center on November 17, 2008. *Id.*

In January 2009, Plaintiff was disciplined for failing to comply with instructions to be mindful of wearing dangling earrings at work. [Entry #17-26 at 32].

On November 24, 2009 Plaintiff received a written warning from the Wellness Center manager for failure to work scheduled weekend hours that had been adjusted to accommodate a personal conflict. [Entry #17-10].

Plaintiff submitted a leave request form on November 29, 2010 requesting leave from December 16, 2010 to December 17, 2010 and from December 21, 2010 to January

3

3, 2011. [Entry #17-11]. Plaintiff's request was approved on December 2, 2010 by Brian Etheridge, the Interim Wellness Center Manager. [*Id.* at 2; Entry #17-12]. The following day, however, Mr. Etheridge sent an interoffice memorandum to all building maintenance grounds ("BMG") staff members stating that the previously-approved vacation request was being disapproved because the work to be done during an operational shutdown in late December was in direct relation to the work that the BMG staff performed during general duty. [*Id.*; Entry #17-26 at 11]. As a result, Plaintiff and others, including his supervisor Cassandra Moody, were expected to work on December 27 and 28, 2010. [Entry #17-14; Entry #17-27 at 2].

On the same day, Plaintiff and Ms. Moody met with Mr. Etheridge regarding the revocation of their leave requests. [Entry #21-4 at 7]. During the meeting, Ms. Moody asked what would happen if she did not report to work on those two days. *Id.* Mr. Etheridge indicated they needed to speak with Hattie Bing to determinate what would happen. *Id.* Plaintiff and Ms. Moody met with Ms. Bing and asked about not reporting to work. *Id.* at 8. Ms. Bing questioned why their leave would be disapproved when both had available leave time and indicated she would ask Mr. Etheridge. *Id.*

Plaintiff and Ms. Moody met with Ms. Bing and Mr. Baker on December 6, 2010. [Entry #17-26 at 9; Entry #21-4 at 8]. Ms. Moody testified that Mr. Baker told her that her disciplinary action for not coming in would be leave without pay. [Entry #21-4 at 10]. According to Ms. Moody, Plaintiff also met with Ms. Bing and Ms. Josie privately. *Id.*

4

On December 7, 2010, Plaintiff wrote a letter stating that his vacation had been approved and he would be out of town. [Entry #17-13]. He stated that he did not think he should be placed on leave without pay for failing to appear for work on December 27 and 28, 2010 because he requested vacation before those mandatory workdays were put into place. *Id.*

Mr. Baker responded to Plaintiff by letter on December 15, 2010. [Entry #17-14]. He stated the following:

> You have clearly demonstrated your unwillingness and/or inability to follow directives of your up line supervisors. Your behavior has shown to be disrespectful and insubordinate. Additionally, your attitude is and has been disruptive to the work unit. You have clearly shown yourself not to be a "team player".

[Entry #17-14]. Mr. Baker advised Plaintiff that he was expected to be present and performing his assigned duties on December 27 and 28, 2010, and that his failure to be present would be met with disciplinary action. *Id.* Mr. Baker further noted that any further instances of insubordination or disrespectful behavior by Plaintiff would be met with progressive disciplinary action. *Id.*

Plaintiff wrote a letter to Mr. Baker and Mr. Etheridge on December 17, 2010 stating that he believed the two men had a personal vendetta toward him "as an employee who always speaks out for what rights [he has] as a city employee." [Entry #17-15]. He stated that he had the vacation time and planned to take it with his family during the holidays. *Id.* He questioned how taking full advantage of his vacation time resulted in him not being a team player. *Id.* He noted that he was told that if he failed to report to work as requested, he would be in jeopardy of losing his job. *Id.*

Plaintiff did not appear for work on December 27 and 28, 2010 and did not call in on those days. [Entry #17-26 at 15–16]. Ms. Moody called in on December 27, but did not call in or report for work on December 28. [Entry #17-27 at 3–4].

When Plaintiff reported to work on January 3, 2011, Mr. Etheridge told him that he could not work until he (Plaintiff) spoke to Mr. Baker. [Entry #17-16 at 2]. Plaintiff laughed and walked out of the office. *Id.* He then followed Mr. Etheridge to the pool area and asked why he need to leave his job. *Id.* Mr. Etheridge stated that Plaintiff would need to set up an appointment with Mr. Baker before he could come back on the property. *Id.* Mr. Etheridge further stated that he had been instructed to call the police if Plaintiff would not leave the property. *Id.* Plaintiff told Mr. Etheridge to call the police because he had not been given any termination papers and was willing to go to jail. *Id.* Plaintiff then called Mr. Baker, who asked Plaintiff to meet him at his office later that morning. *Id.* at 2–3. During the meeting, Plaintiff stated he had not called in regarding the days he was out because he was on vacation. *Id.* at 2. Mr. Baker informed Plaintiff that he was no longer employed by Defendant and provided him with termination papers the following day. *Id.* Plaintiff elected not to file a grievance regarding his discharge. [Entry #17-26 at 2–3].

On January 13, 2011, Ms. Moody was placed on probation for six months for her failure to work on December 27 and 28, 2010. [Entry #17-20; Entry #17-26 at 31]. She was also given a written warning and leave without pay. [Entry #17-26 at 31].

Plaintiff filed a charge of discrimination with the South Carolina Human Affairs Commission ("SCHAC") on February 9, 2011. [Entry #17-23]. In his complaint, he

6

alleged he had been discriminated based on sex when he was discharged for failing to report to work on December 27 and 28, 2010. *Id.* On May 20, 2011, SCHAC concluded there was not sufficient proof to support Plaintiff's allegations of discrimination, and it issued a notice of right to sue. [Entry #17-24 at 2–4]. The Equal Employment Opportunity Commission ("EEOC") issued a dismissal and notice of suit rights on June 22, 2011. *Id.* at 5. Plaintiff filed the present action alleging gender discrimination on August 17, 2011. [Entry #1].

II.     Discussion

    A.     Standard of Review

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

7

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

B.     Analysis

Defendant argues Plaintiff has failed to establish a prima facie case of gender discrimination under Title VII because his disciplinary history is not comparable to that of Ms. Moody, the purported comparator. [Entry #17-1 at 7–8]. Defendant alternatively argues that even if Plaintiff has established a prima facie case, he is unable to rebut the legitimate grounds offered for his termination. *Id.* at 9–11. Plaintiff disputes both assertions. [Entry #21 at 6–12].

Title VII makes it unlawful for an employer to discriminate against an employee with respect to compensation, terms, conditions or privileges of employment on the basis of race. 42 U.S.C. § 2000e–2(a). In the absence of direct evidence of discrimination, courts apply the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, Plaintiff has the initial burden of establishing a prima facie case of discrimination. The parties agree that to establish a prima facie case of disparate discipline, a plaintiff must show (1) that he engaged in prohibited conduct similar to that of a person of another race, color, sex, religion, or national origin, and (2) that disciplinary measures enforced against the

8

plaintiff were more severe than those enforced against the other person. *Lightner v. City of Wilmington*, 545 F.3d 260, 264–65 (4th Cir. 2008). Thus, the task falls on Plaintiff to identify a suitable comparator, bearing in mind that "[t]he similarity between comparators and the seriousness of their respective offenses must be clearly established in order to be meaningful." *Bradley v. South Carolina Dept. of Corrections*, C/A No. 3:08-2510-JFA, 2010 WL 883729 (D.S.C. March 5, 2010) (citing *Lightner*, 545 F.3d at 265).

If Plaintiff establishes a prima facie case, the burden shifts to Defendant to produce a legitimate, nondiscriminatory reason for the disparate treatment. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254 (1981). This is merely a burden of production, not of persuasion. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 506 (1993).

Once Defendant has met its burden of production by producing its legitimate, nondiscriminatory reason, the sole remaining issue is "discrimination *vel non.*" *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000) (citing *Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 716 (1983)). In other words, the burden shifts back to Plaintiff to demonstrate by a preponderance of the evidence that the legitimate reason produced by Defendant is not its true reasons, but was pretext for discrimination. *Reeves*, 530 U.S. at 143. Throughout the burden-shifting scheme set forth in *McDonnell Douglas*, the ultimate burden of proving that Defendant intentionally discriminated against Plaintiff remains at all times with Plaintiff. Plaintiff has the ultimate burden of presenting evidence from which a reasonable jury could conclude defendant intentionally discriminated against him.

Defendant argues that Plaintiff has failed to establish a prima facie case of discrimination because he has not identified a suitable comparator. Specifically, Defendant argues that Plaintiff and Ms. Moody were not similarly-situated because their disciplinary histories are not comparable. [Entry #17-1 at 7–8]. As of December 27 and 28, 2010, when Plaintiff and Ms. Moody failed to report to work as scheduled, Ms. Moody had a clean disciplinary record. *Id.* at 8. In contrast, Plaintiff had been disciplined on numerous occasions. *Id.* Furthermore, Ms. Moody called in her absence on December 27, 2010, while Plaintiff did not. *Id.*

Plaintiff does not dispute the difference in Ms. Moody's disciplinary record or that she called in to report her absence on December 27, 2010. [Entry #21 at 10]. Rather, Plaintiff contends that Defendant's argument is unpersuasive because "[t]he comparators must be similar in all relevant respects, not in all respects." *Id.* Plaintiff does not explain or provide support for the position that the difference in the disciplinary records of Plaintiff and Ms. Moody is not relevant.

Plaintiff's position is contradicted by legal precedent in this district. In *Mahomes v. Potter*, 590 F. Supp. 2d 775, 783 (D.S.C. 2008), Judge Seymour found that the disciplinary history of the plaintiff and the purported comparator was not similar where the comparator had not been disciplined for over two years before he was given a written warning for the same violation for which the plaintiff was terminated and where the plaintiff had accumulated multiple suspensions in the two years prior to her final misconduct. Likewise, in *Shivers v. South Carolina Dept. of Corrections*, C/A No. 3:09-3357, 2011 WL 4549266, at *7 (D.S.C. Sept. 1, 2011), Judge Seymour found that the

10

plaintiff failed to identify similarly-situated comparators where, prior to the corrective action at issue, the plaintiff had committed six rule violations, the first comparator had received only one written warning, and the second comparator had a clean disciplinary record.

Based on the foregoing, the undersigned recommends a finding that the differences in the disciplinary records of Plaintiff and Ms. Moody are relevant and render Ms. Moody an unsuitable comparator. As a result, the undersigned further recommends finding that Plaintiff has failed to state a prima facie case of disparate discipline and granting Defendant's motion for summary judgment.

Even assuming Plaintiff has stated a prima facie case of disparate discipline, Defendant has met its burden of producing a legitimate, non-discriminatory reason for his discharge. Defendant cites Plaintiff's defiant and insubordinate attitude before and after December 27 and 28, 2010 as the reason for his discharge. [Entry #22 at 2–3].

Because Defendant has established a legitimate, non-discriminatory reason for Plaintiff's discharge, to survive summary judgment, Plaintiff has the burden of showing that Defendant's articulated reasons are pretextual. *See Reeves*, 530 U.S. at 147–148 (it is the plaintiff's burden to create an inference that the defendant's proffered reason is a pretext for intentional discrimination). A plaintiff must produce "sufficient evidence to find that the employer's asserted justification is false," which, when coupled with the prima facie case, may permit the trier of fact to conclude that unlawful discrimination has occurred. *Id.* at 148.

Here, Plaintiff has not provided evidence of pretext. Plaintiff argues that Defendant's shifting reasons for his termination are evidence of pretext [Entry #21 at 12]; however, Plaintiff's brief undercuts his argument. Plaintiff correctly states that Defendant "articulates as its legitimate, non-discriminatory reason for terminating Cheeseboro that his failure to report to work on December 27–28, 2010 was insubordinate and disrespectful." *Id.* at 11. Plaintiff then states that at the time he was terminated, the only reason ever articulated "was that his failure to report to work on December 27–28, 2010 was insubordinate and disrespectful." *Id.* at 12. Defendant's current position and its position at the time of the termination are consistent.

It appears that Plaintiff's argument regarding the shifting reasons for the termination is based on Defendant's attempt to distinguish the disciplinary records of Plaintiff and Ms. Moody. *Id.* at 11–12. However, Plaintiff's argument is misplaced because Defendant's contentions regarding the disciplinary records were made in the context of whether Ms. Moody was a similarly-situated comparator. Because Plaintiff has failed to demonstrate that Defendant's reasons for terminating Plaintiff were pretextual, the undersigned recommends granting Defendant's motion for summary judgment.

Furthermore, where a plaintiff alleges discrimination claims under Title VII and simultaneously alleges that the true motivating factor before the employer's allegedly wrongful actions was something other than a prohibited factor under Title VII, summary judgment is appropriate as to the Title VII claims. *Shivers*, 2011 WL 4549266, at *8 (citing *Lightner*, 545 F.3d at 261, 263–64. The plaintiff in *Lightner*, a police officer,

claimed his employment was terminated because of his race and gender, and also because of his internal investigation regarding other officers' failure to report automobile accidents. *Id.* at 262. The Fourth Circuit held that "Lightner's acknowledgment that he was fired to stop his internal investigation negates his claims of race and gender discrimination. Consequently, his suspension, however wrongful, is not actionable under Title VII and the defendants are entitled to summary judgment." *Id.* at 264.

Here, Plaintiff asserted in writing on December 17, 2010 that he believed Mr. Baker and Mr. Etheridge had a personal vendetta toward him "as an employee who always speaks out for what rights [he has] as a city employee." [Entry #17-15]. Because Plaintiff has provided a motivating factor for his termination that is unrelated to his gender or any other characteristic protected by Title VII, summary judgment is warranted.

Finally, it must be noted that in his response to Defendant's motion, Plaintiff appears to be making a detrimental reliance argument by placing great significance on Mr. Baker's alleged representation that Plaintiff and Ms. Moody were both told they would receive leave without pay if they did not report to work. [Entry #21 at 9]. Plaintiff argues without citation that "the City maintained throughout the process that both Moody and Cheeseboro would receive the same disciplinary action should they fail to report to work." *Id.* at 11. Regardless of what was said and to whom it was said at the December 6, 2010 meeting regarding potential disciplinary action for failing to report to work, the record evidence contradicts Plaintiff's reliance argument. In his December 17, 2010 letter to Mr. Baker and Mr. Etheridge, Plaintiff specifically noted that he was told that if

13

he failed to report to work as requested, he would be in jeopardy of losing his job. *Id.* Consequently, the undersigned concludes that Plaintiff was on notice of his potential termination if he failed to report to work on December 27 and 28, 2010, and Mr. Baker's statement regarding leave without pay is of no import.

III.     Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends Defendant's motion for summary judgment [Entry #17] be granted.

IT IS SO RECOMMENDED.

January 7, 2013                                               Shiva V. Hodges
Columbia, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**

14

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).